UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No. 3:10-CV-018-JD-CAN ) |
| NANCY J. SHIRK and DONALD M. SHIRK, | ) ) ) |
| Defendants. | ) |
| NANCY J. SHIRK and DONALD M. SHIRK, | ) ) ) |
| Counter-Claim Plaintiffs, | ) ) |
| v. | ) ) |
| AUTO-OWNERS INSURANCE COMPANY, | ) ) ) |
| Counter-Claim Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Now before the Court is Plaintiff Auto-Owners Insurance Company's Motion for Summary Judgment [DE 51] against Defendants Nancy and Donald Shirk. For the reasons below, the Court denies the motion with respect to both Auto-Owners' claim for breach of the insurance policy and the Shirks' counterclaim for tortious breach of the duty of good faith dealing.

### I. BACKGROUND

This action involves a Complaint for Declaratory Judgment filed by Auto-Owners Insurance Company to determine whether the insured's settlement with the other party involved in the

1

accident, without the insurer's consent, bars underinsured motorist coverage under an automobile policy.

Auto-Owners issued an automobile insurance policy to Nancy J. Shirk and Donald M. Shirk with effective dates of coverage from August 11, 2005 to February 11, 2006. DE 53-4. The Policy contained uninsured/underinsured motorist coverage with limits of $250,000 per person and $500,000 per accident, and medical payments coverage. DE-53-4 at 7. The Policy also contained standard provisions preserving Auto-Owners' right to recover payments made to the insured if the insured has a right to recover damages, DE 53-4 at 42, and requiring its written consent for settlements, DE 53-4 at 13, as well as a subrogation provision allowing Auto-Owners to match any settlement offer from an underinsured motorist and take a right of subrogation against that motorist. DE 53-4 at 16.

On November 25, 2005, Donald Shirk was driving the Shirks' 1997 Oldsmobile northbound on Highley Road in Mesa, Arizona with his wife Nancy as a passenger. DE 53-2 at 4. Alfredo Castano was driving his automobile southbound on Highley Road and turned left in front of the Shirks' vehicle, causing a collision. *Id*. As a result of the accident, Nancy Shirk was physically injured and the 1997 Oldsmobile was seriously damaged. DE 53-3, No. 19.

Castano was insured under an automobile insurance policy issued by Farmers Insurance Company. *See* DE 53-3, No. 2, 3. His policy has bodily injury liability limits of $30,000. DE 53-3, No. 2. On May 7, 2006, Nancy Shirk notified Stacy Edgell, an agent of Auto-Owners, that she intended to contact Farmers in order to make a bodily injury liability claim. DE 53-5 at 5. Nancy Shirk spoke with Edgell again on February 8, 2007, and informed her that she was considering hiring an attorney to represent her in the matter. *Id.* On September 18, 2007, Nancy Shirk notified

2

Edgell that she was currently negotiating with Farmers regarding the bodily injury claim. *Id*. Finally, on November 2, 2007, Nancy Shirk informed Edgell that Farmers had offered to settle the claim for $30,000. *Id*. She further explained that she believed this was the liability limit of Castano's policy but that, at the time, she did not intend to accept the offer. *Id.* On November 16, 2007, Nancy Shirk accepted the $30,000 settlement offer from Farmers and executed a Release in Full of All Claims and Rights. *Id.* at 6; DE 53-3, No. 3. The Shirks did not obtain Auto-Owners' consent to settle their claim with Farmers or Castano prior to accepting the settlement. DE 53-2 at 6–7; 53-3, No. 12.

On November 19, 2007, the Shirks, by counsel, informed Auto-Owners that they had settled their claim with Castano and Farmers Insurance and provided notice of a claim for underinsured motorist benefits under their policy with Auto-Owners. DE 53-5 at 4. The Shirks tendered their formal demand for the full limits of underinsured motorist benefits coverage under the Auto-Owners policy on April 30, 2009. *Id*.

On January 13, 2010, Auto-Owners filed this Complaint for Declaratory Judgment in the United States District Court, Northern District of Indiana. *See* DE 1. In response, the Shirks filed a Complaint in Maricopa County, Arizona. *See* DE 53-6. Ultimately, the Arizona Lawsuit was removed to federal court in Arizona and then transferred to the Northern District of Indiana, where it was dismissed without prejudice . *See* DE 53-7, 53-8. Auto-Owners filed an Amended Complaint for Declaratory Judgment on July 22, 2010. *See* DE 24, and the Shirks answered and filed their Counter-Claim in this action on August 17, 2010. *See* DE 26. Auto-Owners filed this motion for summary judgment on July 13, 2012. *See* DE 51.

## II. STANDARD OF REVIEW

On summary judgment, the burden is on the moving party to demonstrate that there "is no

3

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That means that the Court must construe all facts in the light most favorable to the nonmoving party, making every legitimate inference and resolving every doubt in its favor. *Kerri v. Bd. Of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any such material fact, and summary judgment is therefore inappropriate, when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. On the other hand, where a factual record taken as a whole could *not* lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)). Summary judgment is not a tool to decide legitimately contested issues, and it may not be granted unless no reasonable jury could decide in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party, as well as draw all reasonable and justifiable inferences in her favor. *Anderson*, 477 U.S. at 255; *King v. Preferred Technical Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). But the non-moving party cannot simply rest on the allegations or denials contained in its pleadings. It must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).

## III. DISCUSSION

**A.    There is a genuine dispute of material fact regarding whether Nancy Shirk reasonably relied on Auto-Owner's silence regarding the requirement to seek consent prior to a settlement.**

Under Indiana law, an insured has a general duty to become familiar with the contents of an insurance policy.[1] *Nat'l Mut. Ins. Co. v. Curtis*, 867 N.E.2d 631, 635 (Ind. Ct. App. 2007). However, "courts are not inclined to countenance the playing of games by insurance companies leading to policy defenses, and are prone to require a company to bring to its insured's attention any provision with which compliance is required." *Westfield Nat. Insur. Co. v. Nakoa*, 963 N.E.2d 1126, 1131-32 (Ind. Ct. App. 2012). Indeed, "certain exceptions to the duty placed upon the insured to acquaint itself with the policy do exist." *Medtech Corp. v. Indiana Ins. Co.*, 555 N.E.2d 844, 850 (Ind. Ct. App. 1990). For example, "reasonable reliance upon an agent's representations can override an insured's duty to read his insurance policy." *Id.* Whether or not such reliance is reasonable is a question of fact, though whether it is a material fact is for the Court to determine. *See Wiggam v. Associates Fin. Serv. of Ind., Inc.*, 677 N.E.2d 87, 90 (Ind. Ct. App. 1997).

When an insured settles a tort claim without the insurer's consent, the insured breaches the insurance policy's provisions requiring protection of the insured's subrogation rights and forfeits any claim for underinsured motorist benefits under the policy. *Cincinnati Ins. Co. v. Adkins*, 935 N.E.2d 190, 193 (Ind. Ct. App. 2010) (citing *Tate v. Secura Ins.*, 587 N.E.2d 665, 670 (Ind. 1992)). However, it is "well settled that contractual provisions of an insurance policy may be waived or that the insurer may be estopped from asserting such provisions." *Westfield Nat. Ins.*, 963 N.E.2d at

---

[1] The parties agree that Indiana law applies to this case.

1132. Although the concepts of "waiver" and "estoppel" are "technically distinct", the terms are often used interchangeably with respect to insurance matters. *Id*. "Mere silence or inaction on the part of the insurer is not sufficient to constitute express waiver", but "[w]aiver may be implied from the acts, omissions, or conduct of one of the parties to the contract." *Id*. However, estoppel or implied waiver based upon an insurer's silence "generally requires a showing of resulting prejudice to the insured." *Id*.

Here, the Shirks do not dispute that their automobile insurance policy with Auto-Owners contained provisions requiring that they obtain the consent of Auto-Owners before releasing any party from liability as a part of a settlement—although there is no suggestion that they knew of this condition at the time they settled. Nor do they dispute on November 16, 2007, Nancy Shirk accepted a $30,000 settlement offer from Farmers and executed a Release in Full of All Claims and Rights without obtaining the prior consent of Auto-Owners. Moreover, they agree that under Indiana, this would generally constitute a breach of the policy provision protecting the insurer's subrogation rights. But the Shirks argue that Auto-Owners should be estopped due to a failure to act when it had knowledge of their settlement negotiations.

In *Tate v. Secura Ins.*, the plaintiff was seriously injured in an auto accident and settled with the tortfeasor's insurance company for the policy limits of $50,000. 587 N.E.2d at 667. During an approximately four month period, the plaintiff's insurer had actual knowledge that the plaintiff was in settlement negotiations. *Id.* at 671. However, at no time did the plaintiff's insurer object to the plaintiff's settlement negotiations with the tortfeasor's insurer nor assert any right to consent to any resulting settlement. *Id*. The plaintiff argued that the insurer was estopped from claiming a breach of the policy because of a failure to inform plaintiff of the policy provision. *Id.* at 670-71. The court

held that since it could not determine as a matter of law whether the plaintiff reasonably relied on the insurer's silence to his detriment and questions of material fact remained, the insurer was not entitled to summary judgment. *Id.* at 672.

Auto-Owners argues that *Tate* should not control because of two factual differences. First, that Nancy Shirk had informed Auto-Owners on November 2, 2007 that she would not be accepting the settlement offer. Second, that Auto-Owners did not have notice that the Shirks intended to file an underinsured motorist claim. Regarding the first argument, the undisputed evidence does indicate that Nancy Shirk informed Auto-Owners via Stacy Edgell on November 2, 2007 that, at the time, she did not intend to accept the settlement offer from Farmers. *See* DE 53-5 at 5. However, Auto-Owners' own evidence shows that it was aware that settlement negotiations were taking place between Nancy Shirk and Farmers as early as September 18, 2007. *See* DE 53-5 at 5. Further, Auto-Owners was aware that Nancy Shirk was pursuing a bodily injury liability claim against Farmers as early as May 7, 2006, and it is no secret that the eventual outcome of most such litigation is a settlement agreement. *See* DE 53-5 at 5. Thus, Auto-Owners knew that Nancy Shirk was in settlement negotiations with Farmers for at least six weeks—and likely much longer—yet failed to protect its subrogation rights and bring the relevant policy provisions to Nancy Shirk's attention. It is true that *Tate* differs from the case at hand because the insured in *Tate* never told the insurer that he did not intend to accept the settlement offer, but this difference has little, if any relevance: the insurer's in both *Tate* and this case had actual knowledge that settlement negotiations were taking place for an extended period of time and failed to advise the insured of the relevant policy requirements in order to protect their subrogation rights. 587 N.E.2d at 671. Moreover, even after the Shirks informed Auto-Owners that they planned to reject the settlement offer, there is no

evidence that they indicated that settlement negotiations were ending for good. In fact, at that point Auto-Owners was aware that Farmers had offered the policy limits, making it more likely that the Shirks would settle.

Regarding Auto-Owners' second argument, it is true that Auto-Owners did not receive actual notice of the Shirks' intent to file a claim for underinsured motorist benefits until November 19, 2007, three days after the Shirks had settled with Farmers Insurance. *See* DE 53-5 at 4. But although the court in *Tate* did consider the insurer's notice of the insured's intent to file an underinsured motorist claim, 587 N.E.2d at 671, the important fact in that case was that the insurer knew of ongoing *settlement negotiations* and did not inform the insured of the consequences of a settlement. *Id*. Therefore, *Tate* remains instructive for this court.

Indiana courts are "prone to require a company to bring to its insured's attention any provision with which compliance is required." *Nakoa,* 963 N.E.2d at 1131-32. While "mere silence or inaction on the part of an insurer is not sufficient to constitute an *express* waiver," estoppel or implied waiver may apply as long as reliance results in prejudice. *Tate*, 587 N.E.2d at 671. Here, like in *Tate*, genuine issues of fact exist relating to whether Auto-Owner's silence during settlement negotiations between Nancy Shirk and Farmers, despite having actual knowledge that such negotiations were taking place, operated to mislead Nancy Shirk, whether Nancy Shirk was entitled to rely on Auto-Owner's conduct as such, and whether Nancy Shirk suffered a consequent change of position to her detriment. *Id*. When construing the evidence and all inferences that reasonably can be drawn from the evidence in the light most favorable to the Shirks, *Nation*, 682 F.3d at 651, this court cannot conclude that Auto-Owners is entitled to judgment as a matter of law, and thus must deny summary judgment. *Tate*, 587 N.E.2d at 671.

**B. There are genuine issues of material fact regarding whether Auto-Owner's decision not to inform the Shirk's of their obligations under the policy and decision to deny coverage were made in bad faith.**

The Indiana Supreme Court has recognized a cause of action for the tortious breach of an insurer's implied duty to deal with its insured in good faith. *Erie Ins. Co. v. Hickman By Smith*, 622 N.E.2d 515, 519 (Ind. 1993). This duty of good faith and fair dealing includes the obligation to refrain from:

> (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into settlement of his claim.

*Id.* "A finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will." *Allstate Ins. Co v. Fields*, 885 N.E.2d 728, 732 (Ind. Ct. App. 2008) (quoting *Lumbermens Mut. Cas. Co. v. Combs*, 873 N.E.2d 692, 714 (Ind. Ct. App. 2007). Finding bad faith "inherently includes an element of culpability" that must be satisfied by "conscious wrongdoing." *Id*. Thus, "poor judgment or negligence do not amount to bad faith." *Id*. Further, there must be evidence of the insurer's conscious wrongdoing; even an improper denial of coverage, without more, is insufficient evidence for a showing of bad faith. *Spencer v. Bridgewater*, 757 N.E.2d 208, 212 (Ind. Ct. App. 2001).

Here, there are two conceivable bases for a bad faith claim. The first, under the first prong of *Erie*, is whether Auto-Owners had a rational basis to deny the Shirks' claim even knowing that the insurance adjustor did not inform them that they would lose any underinsured motorist coverage unless Auto-Owners approved the settlement. It is true that "a good faith dispute about . . . whether the insured has a valid claim at all will not supply the grounds for a recovery in tort for the breach

9

of the obligation to exercise good faith." *Id.* at 520. Indeed, "that insurance companies may, in good faith, dispute claims, has long been the rule in Indiana." *Id*. However, an insurer that denies liability knowing there is no rational, principled basis for doing so has breached its duty. *Id*.

By now, the rule from *Tate* discussed above—that an insurer may be estopped from denying underinsured motorist coverage if, knowing that its insured is actively contemplating settlement, it fails to inform its insured of the subrogation requirements—is well-established in Indiana. As discussed above, in this case there is evidence that Auto-Owners knew for some time that the Shirks were negotiating with Farmer's and, by early November 2007, that Farmer's had made a definitive settlement offer at the tortfeasor's low policy limit of $30,000. It is also undisputed that Auto-Owner's agent did not inform Mrs. Shirk of her subrogation obligations under the policy and undisputed that Shirk was otherwise unaware of the obligation to do so. For the reasons discussed above, the Court is not convinced by Auto-Owner's attempt to distinguish *Tate* in this case. True, there will always be some room to argue that an insured should have known the terms of the policy and did not reasonably rely on the adjustor's silence. But taking all the facts in the light most favorable to the Shirks and drawing all reasonable inferences in their favor, a jury could conclude that Auto-Owner's knew, at the time it denied coverage, that the Shirks *had* relied on the agent to explain what they needed to do, and therefore also knew that it was estopped from denying their claim. If so, Auto-Owner's dispute over *Tate*'s applicability is not in good faith.

The second plausible theory for the Shirk's bad faith claim is based on the third *Erie* category, deception. In *Webster v. Pekin Ins. Co.*, 713 N.E.2d 932, 938 (Ind. Ct. App. 1999), the plaintiff alleged that despite promising to pay him $200,000 in underinsured motorist benefits, the defendant later denied his claim because he had settled with the tortfeasor. The trial court granted

summary judgment but the appellate court reversed, holding that "because the deceiving of an insured may support an action for breach of the duty to deal in good faith, a genuine issue of material fact exists as to whether [the defendant] deceitfully promised to pay Webster $200,000 in underinsured motorist benefits." *Id.* While there was concededly no affirmative misrepresentation in this case, and the Court has not found precedent specifically approving a bad faith claim in the context of an estoppel claim under *Tate* due to silence in the face of an insured's reliance, the Court holds that no such affirmative act is necessary. A "deceptive act" in many legal contexts, simply means "conduct that is likely to deceive a consumer acting reasonably under similar circumstances." *Black's Law Dictionary* 413 (7th ed. 1999). An affirmative deceitful promise is not required. Therefore, the Court holds that such a claim could fall under the deception prong of *Erie*, or a reasonable extension from its non-exhaustive lists of bad faith acts. 622 N.E.2d at 519 ("We need not determine the precise extent of [the duty of good faith] today.").

Here, construing all facts and making all reasonable inferences in favor of the Shirks, *Nation*, 682 F.3d at 651, the jury could find: that Auto-Owner's agent knew that the Shirks were unaware that their settlement required approval or the consequences of failing to seek approval; that she knew that they were relying on the insurer to explain their responsibilities to them; that she knew that they were reasonably likely to settle for less value than the harm they suffered; and that she knew that such a settlement, without approval, would cost them underinsured motorist benefits under their policy. Further, the only explanation the defendant offers for the failure to disclose the policy requirements is that the insurance adjustor had no duty to inform the Shirks what was contained in the policy. As discussed above, however, it is well established that Indiana courts do not countenance an insurer's reliance on conditions precedent that it did not bring to the attention of its

11

insured. Under these facts and circumstances, a jury could conclude that Auto-Owner's agent intended to and did deceive the Shirks into unnecessarily giving up their underinsured motorist benefits.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Plaintiff's Motion for Summary Judgment [DE 51].

SO ORDERED.

ENTERED:  March 5, 2013 

                                           /s/ JON E. DEGUILIO
                                           Judge
                                           United States District Court